**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.**

JAIME ORTIZ,
        Plaintiff,

vs.

THE SCHOOL BOARD
OF BROWARD COUNTY,        **COMPLAINT**
FLORIDA, a Florida
governmental entity,
        Defendant.
_____/

      Plaintiff, Jaime Ortiz, through his undersigned counsel, hereby files this Complaint, against

the Defendant, the School Board of Broward County, Florida; a Florida governmental entity, and/

or a political subdivision of the State of Florida, and he states as follows:

**I.**
**JURISDICTION**

1.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended,

       42 U.S.C. Section 2000(e), *et seq.*, The jurisdiction of this Court, is invoked to secure the

       protection of and to redress the deprivation of rights, secured by 42 U.S.C. Section 2000(e)*,*

       *et seq.,* against national origin discrimination in the workplace.

2.     Plaintiff also brings this case under the anti-retaliation provision of Title VII of the Civil

       Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-3(a), which forbids employers

from retaliating, or from taking adverse personnel actions against employees, who exercise their lawful and protected rights under Title VII.

3. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. Section 1343(3).

4. Venue is properly placed in this district, pursuant to 28 U.S.C. Section 1391(b), because it is where all of the parties resided and where the events complained of occurred.

5. Plaintiff, Jaime Ortiz ("ORTIZ"), previously filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), pertaining to a hostile work environment, based upon national origin discrimination, as well as disparate treatment, designated by Charge No. 510-2014-05178, the federal agency, which is responsible for investigating claims of employment discrimination; and this charge of discrimination was filed, on or about September 14, 2014, alleging claims of national origin discrimination; which ultimately constituted a hostile work environment claim, as well as disparate treatment, based upon national origin discrimination.

6. On January 31, 2018, Plaintiff filed a complaint in United States District Court, designated by Case No. 18-cv-60209-WPD, based on the allegations of Charge No. 510-2014-05178, wherein, Plaintiff had claimed that he was subjected to a hostile work environment, based upon national origin discrimination; as well as disparate treatment, also based upon national origin discrimination.

7. The District Court case, designated by Case No. 18-cv-60209-WPD, was litigated throughout calendar year 2018, until the District Court entered an award of summary judgment, in favor of the Defendant, on both claims, the a hostile work environment claim,

2

based upon national origin discrimination; as well as disparate treatment claim, based upon national origin discrimination.

8. However, on August 9, 2019, the Eleventh Circuit Court of Appeals, partially reversed the District Court's prior award of summary judgment; and remanded the hostile work environment claim, based upon national origin, to the District Court for trial.

9. On October 8, 2019, the jury in the District Court case, designated by Case No. 18-cv-60209-WPD, entered a verdict in favor of the Plaintiff on the hostile work environment claim, based upon the Plaintiff's national origin.

10. On January 17, 2018, Plaintiff filed another Charge of Discrimination with the Equal Employment Opportunity Commission, designated by Charge No. 510-2018-01985, claiming that he was subjected to national origin discrimination and retaliation, due to being subjected to a Broward County School Board internal investigation, based upon an alleged theft of school property; and the United States Department of Justice, Civil Rights Division entered a Right to Sue Memorandum on January 31, 2020.

11. On February 11, 2019, Plaintiff filed an additional Charge of Discrimination with the Equal Employment Opportunity Commission, designated by Charge No. 510-2019-02278, claiming that he was subjected to unlawful and impermissible retaliation, since he was discharged from his position with the School Board of Broward County, on January 10, 2019, without any reasonable business justification, and the United States Department of Justice, Civil Rights Division entered a Right to Sue Memorandum on January 31, 2020.

12. The Plaintiff has complied with all administrative prerequisites, which are necessary to file a law suit, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e), *et seq.*, in that he filed an appropriate charge(s) of discrimination, within the applicable time frames, and hence, he has exhausted all pertinent administrative procedures.

13. On January 31, 2020, the United States Department of Justice, Civil Rights Division entered a Right to Sue Memorandum, with regard to the prior investigation, in Charge No. 510-2018-01985, previously undertaken by the Miami District Office of the Equal Employment Opportunity Commission, providing the Plaintiff with ninety (90) days in which to file a civil action with the district court. [*See,* the United States Department of Justice's Right to Sue Memorandum, attached hereto, as **EXHIBIT A**].

14. On January 31, 2020, the United States Department of Justice, Civil Rights Division entered a Right to Sue Memorandum, with regard to the prior investigation, in Charge No. 510-2019-02278, previously undertaken by the Miami District Office of the Equal Employment Opportunity Commission, providing the Plaintiff with ninety (90) days in which to file a civil action with the district court. [*See,* the United States Department of Justice's Right to Sue Memorandum, attached hereto, as **EXHIBIT B**].

15. Plaintiff has initiated this action within ninety (90) days of his receipt of the two Right to Sue Letters, which had been previously issued by the United States Department of Justice.

16.    Therefore, Plaintiff is fully authorized to file this action at this juncture, within the district court; and he has complied with all conditions precedent to the filing of suit in the federal district court.

## II.
## PARTIES

17.    Plaintiff, Jamie Ortiz (hereinafter, referred to as, "ORTIZ"), was previously employed by Defendant herein, as an Auto Truck Mechanic, for the Defendant's Transportation Department; he began his employment in April of 2000, and he was terminated from his employment on January 10, 2019, and furthermore, at all material times herein, he was a resident of Pembroke Pines, Broward County, Florida.

18.    Defendant, the School Board of Broward County, Florida (hereinafter, referred to as, the "SCHOOL BOARD," or as, the "Employer"), is a Florida Governmental entity, a pollical subdivision of the State of Florida; and it operates and administers public schools, in Broward County, Florida; through its responsible management officials; and it is responsible for administering personnel policies and procedures, including those personnel policies and procedures regarding the termination of employment, as well as those governing workplace policies and procedures pertaining to employment discrimination and harassment.

19.    Defendant, the SCHOOL BOARD, is an, "employer," within the purview of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e), *et seq.*, since it employed in excess of fifteen (15) employees, within the relevant time period, herein.

20. Defendant, the SCHOOL BOARD, is an, "employer," within the purview of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e), *et seq.*, and it has an affirmative legal obligation, to undertake responsible and remedial measures when confronted with allegations of discrimination and harassment, when such conduct is perpetrated by its subordinate employees, managers and or supervisors.

21. Defendant, the SCHOOL BOARD, is an, "employer," within the purview of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e) 3(a), and as such, the Defendant has an obligation to refrain from retaliating, or from taking adverse personnel actions against employees, who exercise their lawful and protected rights under Title VII.

### III.
### FACTUAL ALLEGATIONS

22. Plaintiff is of Hispanic/Puerto Rican national origin; and he has been employed as an Auto-Truck Mechanic for the Defendant's Transportation Department, since on or about April 3, 2000, until his termination from employment, on January 10, 2019.

23. On August 17, 2017, Plaintiff, along with numerous co-workers, including Bill Coyne; Oscar Penenora; and Tom Dorman, complained to SCHOOL BOARD Foreman Dennis Freemeyer, about the continuing workplace discrimination, perpetrated by SCHOOL BOARD Acting Manager, Tony Welch ("WELCH"), as against the Plaintiff.

24. Specifically, WELCH made numerous discriminatory comments about the Plaintiff's national origin in the workplace; he consistently disparaged the Plaintiff on the basis of his national origin in the workplace; and furthermore, for example, WELCH would repeatedly

6

state to the Plaintiff, "I am going to get rid of all of the 'dirty Puerto Ricans,'" furthermore, WELCH provided the Plaintiff with less desirable work assignments, solely based upon disparate treatment, in short, based solely on his national origin.

25. This internal complaint of discrimination, made by the Plaintiff, against WELCH, resulted in the imposition of an adverse employment action, in that on December 15, 2017, Plaintiff was informed by WELCH, that he (Plaintiff), was being subjected to a disciplinary investigation, initiated by the SCHOOL BOARD's Special Investigation Unit ("SIU"), which was allegedly based on the Plaintiff's purported falsification of vehicle maintenance records and the theft of SCHOOL BOARD property.

26. WELCH was present when Plaintiff received notice of the investigation, which was presented by Special Investigative Unit Police Officer Edward Costello.

27. On December 22, 2017, ORTIZ was transferred out of his position with the Central Area Vehicle Maintenance Division.

28. The opening of the SIU investigation followed the entry of a Letter of Determination by the Miami District Office of the Equal Employment Opportunity Commission, on September 26, 2017, finding that there was reasonable cause to believe that the SCHOOL BOARD indeed violated Title VII of the Civil Rights Act of 1964, as amended, by subjecting Plaintiff to a hostile work environment, primarily during calendar year 2014.

29. Specifically, the SIU Investigation, which was initiated on December 15, 2017; and completed on September 25, 2018, focused on the Plaintiff's alleged inappropriate conduct and fraud, claiming that ORTIZ falsified SCHOOL BOARD maintenance records and that

he inappropriately obtained SCHOOL BOARD items and or property, while working at the Central Area Vehicle Maintenance Division.

30. The SIU Investigation also triggered a criminal investigation, which was undertaken by the Broward County State Attorney's Office; and that office took sworn statements from numerous SCHOOL BOARD Vehicle Maintenance Department employees.

31. On January 24, 2018, Special Investigative Unit Police Officer Edward Costello ("COSTELLO") met with Assistant State Attorney David Schulson ("SCHULSON"), to provide an update on the SCHOOL BOARD investigation; furthermore, on March 16, 2018, WELCH and COSTELLO; met with SCHULSON; and they were told that the State Attorney's Office would be assigning an Assistant State Attorney, to investigate the SCHOOL BOARD's disciplinary allegations against the Plaintiff, as part of a criminal investigation.

32. The SIU Investigation, acting with WELCH as the principal complainant, made false assumptions, on how Vehicle Maintenance Department employees typically perform their work, and these inappropriate assumptions, ultimately led to the filing of false disciplinary allegations against ORTIZ.

33. The SIU Investigation also misrepresented the statements of witnesses, as further evidence of retaliatory *animus* against the Plaintiff, in an effort to falsely establish inappropriate and or unlawful workplace conduct.

34. The fact that ORTIZ may have ordered bus parts, or requested that supervisors or other mechanics order parts, which he initially thought were necessary, but were in fact, not

ultimately placed on buses, does not show or imply any wrongdoing, on ORTIZ'S part; but rather, this is merely a judgment call, which is part of an inspection job.

35.    For the ordering of basic parts for buses, such as oil, a work order is prepared; and the employee who ordered the part, proceeds to the parts counter; typically, ORTIZ and his co-workers would complete approximately seven bus inspections during a normal work day.

36.    Non-supervisory employees may keep track of certain parts, such as oil for the buses; however, other parts, such as oil filters, are specifically tracked by management and or supervisory employees.

37.    WELCH, in effect, spearheaded the investigation with SIU, he was the complainant in the investigation and he seemingly directed the course and nature of the SIU investigation; and he also would sit in, with the SIU Investigator(s), on the various investigative interviews, including the Plaintiff's interview, during the course and progress of the discipljnary personnel investigation.

38.    On January 31, 2018, Plaintiff filed suit in federal district court, in the district court case designated by Case No. 18-cv-60209-WPD; based upon allegations of disparate treatment, due to national origin allegations; as well as a claim of a hostile work environment, based upon pervasive and regular predicate acts of national origin discrimination.

39.    The district court case, designated by Case No. 18-cv-60209-WPD, was litigated in the district court, against the SCHOOL BOARD, throughout calendar year 2018.

40. While the federal court litigation progressed, the Defendant continued to prosecute false disciplinary allegations against the Plaintiff, based on an alleged theft of SCHOOL BOARD property; and due to these disciplinary allegations, which constituted predicate retaliatory conduct, Plaintiff was wrongfully and unjustifiably discharged from his employment with the SCHOOL BOARD on January 10, 2019.

41. The following protected activity, expressed and exhibited by ORTIZ, ultimately resulted in the termination of the Plaintiff from his employment:

   (a) Plaintiff's internal complaint of employment discrimination, initiated and communicated to SCHOOL BOARD supervisory personnel, on or about August 17, 2017;

   (b) The filing of an additional charge of employment discrimination with the Miami District Office of the Equal Employment Opportunity Commission, by the Plaintiff, in Charge No. 510-2018-01985 (January 17, 2018);

   (c) Plaintiff's continued opposition to the internal SIU disciplinary investigation, initiated on or about December 17, 2017;

   (d) Plaintiff's continued litigation of the district court case, against the SCHOOL BOARD, designated by Case No. 18-cv-60209-WPD, throughout calendar year, 2018; and his measured steps in the prosecution of his case, in the district court litigation, against the SCHOOL BOARD.

## COUNT I
## (NATIONAL ORIGIN DISCRIMINATION, VIOLATION OF TITLE VII)

42.   Plaintiff restates and re-avers the allegations contained within Paragraphs 1-41 of the Complaint, as if fully set forth herein.

43.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a), *et seq.,* prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon national origin classifications, considerations, or national origin based, reasons.

44.   The Plaintiff is a Hispanic male, and he possessed the requisite qualifications and skills to perform the job functions, as an Auto Truck Mechanic, within the Defendant's Transportation Division, located in Oakland Park, Broward County, Florida.

45.   Despite Plaintiff's job qualifications, he was consistently and regularly subjected to discrimination and or harassment by Defendant's management, specifically WELCH, based upon his national origin.

46.   WELCH provided Plaintiff with undesirable job assignments, based upon impermissible disparate treatment, due to his national origin.

47.   In addition to being constantly subjected to offensive, national origin-based comments by Defendant's supervisory personnel, which was severe and pervasive, ORTIZ was subjected to adverse employment actions, by being subjected to an internal SIU investigation; without any viable business reason and or justification.

48. As a direct and proximate result of the Defendant's unlawful acts, ORTIZ has suffered great and irreparable economic harm and other associated losses.

49. The Defendant Employer failed to take appropriate remedial measures to end the unlawful and discriminatory disparate treatment.

50. Moreover, as a further result of the Defendant's unlawful national origin-based conduct, the Plaintiff has been compelled to retain undersigned counsel and he has incurred fees and costs.

    **WHEREFORE**, the Plaintiff, JAMIE ORTIZ, respectfully requests that this Court enter judgment against the Defendant, the SCHOOL BOARD OF BROWARD COUNTY, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-2(a), for engaging in an unlawful act of disparate treatment, and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as well as compensatory damages;

B) Award the Plaintiff his costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief, which the Court deems to be just, proper, and equitable.

## COUNT II
## (VIOLATION OF TITLE VII, WORKPLACE RETALIATION)

51. Plaintiff restates and re-avers the allegations contained within Paragraphs 1-41 of the Complaint, as if fully set forth herein.

52. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a) contains an anti-retaliation provision, forbidding employers from retaliating, or from taking an adverse personnel action against employees, who exercise their lawful and protected rights under Title VII.

53. Section 2000(e)-2(a) of Title VII of the Civil Rights Act of 1964, as amended, reads as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because he or she has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

54. Beginning on or about August 17, 2017, Plaintiff had complained internally to SCHOOLL BOARD management, about acts of workplace discrimination, which ultimately resulted in the initiation of a baseless SIU investigation, on or about December 15, 2017.

55. By complaining internally about discrimination, and through a continuation of the district court litigation process, ORTIZ had a reasonable belief that the Defendant had engaged in unlawful conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended, when he alleged that she had been subjected to predicate acts of retaliation, in contravention of principles of equal employment opportunity, such as, being subjected to an internal SIU

baseless investigation, which had no factual foundation, effectively precluding him, from performing his essential job functions as an Auto-Truck Mechanic, for the organization.

56. By making internal complaints of discrimination in the workplace, ORTIZ had a reasonable belief that the Defendant had engaged in unlawful conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended, when management subsequently engaged in predicate acts of retaliation, such as, subjecting him to a factually baseless SIU investigation; and this predicate act of retaliation undermined Plaintiff's status as an employee for the Defendant, and such actions effectively precluded him from performing his essential job functions as an Auto-Truck Mechanic for the organization.

57. Moreover, Plaintiff made additional formal complaints of employment discrimination, filed with the Miami District Office of the Equal Employment Opportunity Commission, Charge No. 510-2018-01985 (January 17, 2018), and Charge No. 510-2019-02278 (February 11, 2019), which was the proximate cause of further impermissible retaliatory conduct by the Defendant.

58. The predicate retaliatory conduct of the Acting Manager, WELCH, was inconsistent with fundamental principles of equal employment opportunity, including, but not limited to retaliating against employees, such as the Plaintiff, who make *bona fide* internal complaints of employment discrimination.

59. WELCH also exhibited his retaliatory conduct, by becoming an active participant in the on-going SIU investigation.

60. As a direct and proximate result of the unlawful acts of the Defendant, in implementing predicate acts of retaliation, Plaintiff has suffered great and irreparable economic harm, compensatory damages, and other associated losses.

61. Moreover, as a further result of Defendant's unlawful retaliatory conduct, Plaintiff has been compelled to retain counsel and he has incurred attorney's fees and costs.

**WHEREFORE**, Plaintiff, JAIME ORTIZ, respectfully requests that this Court enter judgment against the Defendant, the SCHOOL BOARD OF BROWARD COUNTY; and find that the Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a), and order the following additional relief:

   A) Award the Plaintiff actual damages, including appropriate amounts of back pay, front pay, as well as compensatory damages;

   B) Award the Plaintiff his costs and a reasonable attorney's fee;

   C) Enjoin the Defendant from continuing its discriminatory practices; and

   D) Grant any and all appropriate relief, which the Court deems to be just, proper and equitable.

## COUNT III
## (VIOLATION OF TITLE VII, TERMINATION, AS A FORM RETALIATION)

62. Plaintiff restates and re-avers the allegations contained within Paragraphs 1-41 of the Complaint, as if fully set forth herein.

63. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a) contains an anti-retaliation provision, forbidding employers from retaliating, or from taking

an adverse personnel action against employees, who exercise their lawful and protected rights under Title VII.

64.    Section 2000(e)-2(a) of Title VII of the Civil Rights Act of 1964, as amended, reads as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because he or she has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

65.    The following *protected activity*, participated in by ORTIZ, tultimately resulted in the termination of the Plaintiff from his employment:

(a) Plaintiff's internal complaint of discrimination, initiated on or about August 17, 2017;

(b) Plaintiff's continued opposition to the SIU internal disciplinary investigation, initiated on or about December 17, 2017;

(c) The filing of two additional charges of employment discrimination with the Miami District Office of the Equal Employment Opportunity Commission, by the Plaintiff, in Charge No. 510-2018-01985 (January 17, 2018),

(c) Plaintiff's continued good faith litigation, in the district court national origin/hostile work environment case, designated by Case No. 18-cv-60209-WPD, throughout calendar year 2018; and his measured steps in the district court litigation, against the SCHOOL BOARD.

66. While the federal court litigation progressed, through the discovery process, the SCHOOL BOARD, continued to prosecute false disciplinary allegations against the Plaintiff, based on an alleged theft of SCHOOL BOARD property; and due to these disciplinary allegations, which constituted predicate retaliatory conduct, Plaintiff was wrongfully and unjustifiably discharged from his employment with the SCHOOL BOARD on January 10, 2019.

67. WELCH also exhibited his retaliatory conduct, by becoming an active participant in the on-going SIU investigation.

68. The predicate retaliatory conduct of the SCHOOL BOARD management, was inconsistent with fundamental principles of equal employment opportunity, including, but not limited to retaliating against employees, such as the Plaintiff, who make *bona fide* internal complaints of employment discrimination; and or who exhibit protected activity, by participating in the on going court litigation process.

69. As a direct and proximate result of the unlawful acts of the Defendant, in implementing predicate acts of retaliation, Plaintiff has suffered great and irreparable economic harm, compensatory damages, and other associated losses.

70. Moreover, as a further result of Defendant's unlawful retaliatory conduct, Plaintiff has been compelled to retain counsel and he has incurred attorney's fees and costs.

   **WHEREFORE**, Plaintiff, JAIME ORTIZ, respectfully requests that this Court enter judgment against the Defendant, the SCHOOL BOARD OF BROWARD COUNTY; and

find that the Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a), and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back pay, front pay, as well as compensatory damages;

B) Award the Plaintiff his costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief, which the Court deems to be just, proper and equitable.

### Demand for Jury Trial

The Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33316
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-Mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
By: Mark J. Berkowitz

Bruce D. Raticoff
Law Offices of Bruce D. Raticoff
Co-counsel for Plaintiff
The Advocate Building
315 S.E. 7th Street
Suite 300
Ft. Lauderdale, Florida 33301
(954) 253-9501 Telephone
(954) 253-9501 Cell
E-mail: permas53@gmail.com
Fla. Bar No. 282847


/s/ Bruce D. Raticoff
By: Bruce D. Raticoff


Daniel R. Aaronson
Benjamin, Aaronson, Edinger &
Patanzo, P.A.
Co-counsel for Plaintiff
1700 E. Las Olas Blvd.
Suite 202
Ft. Lauderdale, Florida 33301
(954) 779-1700 Telephone
(954) 779-1771 Telecopier
E-mail: danaaron@bellsouth.net
Fla. Bar. No. 314579


/s/ Daniel R. Aaronson
Daniel R. Aaronson

Dated on this 9th day of April, 2020.